We have some pleasant business to transpire. First, I would turn the gavel over to my senior colleague to my right. Mr. Solsky, would you like to rise? I am going to move the admission of Martin Solsky, my law clerk, who has performed magnificently over the past year. He is a member of good standing, the highest bar of the state of Virginia, and I know he possesses all the credentials that are necessary for this bar as well, and I would move his admission. Very well. Your motion is granted, and the applicant will be admitted. Thank you. Our first case this morning is the Fine Family v. the Postal Service. I, Morris Fine, represent the Fine Family. Parenthetically, I am part of that family. And also, parenthetically, my father, who signed the lease that's involved in this, signed it in 1967, and as your honors know, this is a landlord-tenant case. If your honors also know, the Postal Authority had gone out to the general public and asked that the general public erect buildings and they would lease them back. And pursuant to that program, this particular post office was built in Chesapeake, Virginia. The lease itself was in December of 1967. Now, the background to a landlord-tenant case, as your honors know, is that when a tenant takes over a building, it is as if he owns it fee simple, except as he spells out in the lease the duties of the landlord. However, under common law, there was no duty on the landlord for anything whatsoever with regard to a building. In this particular lease, which was written by the Postal Service, we have to interpret the words, maintain, repair, in good tenable condition. What we're fussing about here is some ductwork that is now 40 years old. The ductwork deteriorated over the years. There's no question about it. It has to be replaced. This is a 40-year-old ductwork. Why would that be the responsibility of the government rather than your client? The responsibility is on the part of the United States Postal Service because the word replace is involved in this. If the building's roof failed, got old, and started to leak, would that be your responsibility? That's a repair, if you will. I suppose it had to be completely replaced. Sometimes you have to get a whole new roof. You don't patch it. You have to replace the roof. I submit that under the terms of this lease, there is no word replace in the lease. It's silent. So if the roof caved in, it would be on the Postal Service to replace the roof? Absolutely true. If they had said replace, that's a wholly different thing. There is no word replace in this lease. But counsel, so paragraph 7, which says maintain the demised premises, including the building, and any and all equipment, your position, as I understand it, is that maintaining the premises, including the building, would not include replacing the roof? How would you be maintaining the premises if the roof caved in? Maintaining is repairing. Well, but maintaining in tenable condition, I would think that a building that has no roof wouldn't be regarded as tenable. Well, I would suggest to your honors that if the Postal Service had intended that, they would have put the word replace in there. They drew the lease, and if the word replace would have been in there, then there would have been provision, and I alluded to this, for rent increases. I mean, here it is, 40 years into the lease, and we know that the air conditioning units are going to deteriorate and need to be replaced. We know, maybe, that the roof needs to be replaced, but the word replace is not there. If they drew it, why didn't they put it in there? It's silent. And if it's silent, then it seems to me, at least, that they have that duty because I'm the landlord-tenant now. Okay, suppose that the duct work in its entirety didn't need to be replaced, but there was just a section of it, a very small section of nominal cost that needed to be replaced because, I don't know, some water collected and it was rusting through or something. Would that be your responsibility? Because that would be a repair rather than replacing? Technically, I think when you replace, then that's on the Postal Service, I suggest. So any type of repair that involves an actual replacement of a component, you believe, would fall on their side of the line, no matter how small the component is? There's probably some gray areas. I believe you're right. But what you're doing is you're broadening the interpretation of the word maintain. This is not to be liberally construed. This should be strictly construed against the right of it. The ducts rusted due to water leaking through the roof. Why wouldn't repair of the roof been your responsibility? I think the repair of the roof was our responsibility. And why not everything that flowed therefrom, such as the ducts rusting? I think what happened was, as I read the correspondence, and although I was part of this family, I wasn't involved in all of this. As I read the correspondence, the air conditioning was throwing off, I guess, condensation and it caused leakage. And the broader issue was the air conditioning units that caused this. But air conditioning units always cause condensation. That's expected. Certainly in Chesapeake, Virginia, the humidity is going to be causing condensation. I think in modern air conditioning efficiencies, they have a way to collect the condensation and cause it to go off the building. And in answer to Judge Moore, I think that there is probably some gray area where if you have some deterioration, that's repair. But this is the larger issue of replacement. And when they gave their opinion, the Board of Contract Appeals says it has to be replaced. But I think we all agree that it's not to be replaced. How much money are we talking about here? Do you have an idea of the ballpark? I was just talking to my friend about that, and I have no idea, but it couldn't be much more than $5,000. And that's not the biggest issue here. $5,000 is not. It seems to me that what the real issue is, is the ultimate question of who's going to replace this air conditioning when it goes out for the final time. And that air conditioning is going to be probably in the $40,000 to $50,000 category. And this is going to form a precedent to that, it seems to me. Why didn't your client's failure to repair cause the necessity to replace? If it had been maintained in good repair under the terms of the contract, it perhaps would not have been necessary to replace. It may be. What you posed in that question may be, but it's not factually within this findings of fact or in the joint appendix that the failure to repair caused this leak. I mean, I don't know factually whether that's true or not. Well, if the roof had been repaired, there wouldn't have been a leak, right? Well, the roof was repaired, and I don't think that we're here on the roof issue. It was the air conditioning that needed to be replaced. It was put together with chewing gum and bail wire, I suspect, the way I read what's happening to a 40-year-old. And that caused a leak through the actual air conditioning unit. But it seems to me there's been a discussion in the letters, as I read the letters over, about the cause of all of this. But it seems to me that we're getting to a replacement, and that certainly is foreseeable. It's foreseeable. And the Postal Service should have written that into the lease, and they didn't. And I submit that not having done that, they've caused this issue to be here before you. Now, as I understand it, the lease consisted of a 20-year fixed term followed by, and the way it's described in one of the briefs, I think, was six 5-year options. Were those all exercised at one time, or are they being exercised as they come up? I think they're exercised as they come up, although I did see one. I think I saw that the last one was for 10 years. They exercised the last 10 years, so it's going to go for 10 more years. We'll go to 2017. 2017, all right. I suppose this is a little too early to ask what plans the family has for the building at that point. I mean, we're talking 10 years out, I guess, and you're locked in. I can just tell you that what has happened in most places, this has become a very valuable piece of property. So the building's probably coming down. The building probably has no value. Do you want to reserve your rebuttal time, Mr. Fine? Mr. Chandler? May it please the Court. The Fine Family is required to make the repairs at issue in this case as a result of paragraph 7 of the Lease with the United States Postal Service. That paragraph says that the lessor, Fine Family in this case, is responsible to keep the premises in good repair and tenable condition. Both parties agree that the repair of the ductwork and the replacement of the insulation is necessary to prevent water condensation from leaking through the ceiling and into the building. So there's no dispute as to whether or not the repairs are actually necessary. The Fine Family's only argument is that the word replace doesn't appear in the lease. Notwithstanding that fact, the plain meaning of paragraph 7 requires the Fine Family to replace building elements if it's necessary in order to maintain the building in good repair and tenable condition. Not only is that evident from the plain language of paragraph 7, but that provision has been uniformly interpreted by the Court of Claims and the Postal Service Board of Contract Appeals to require the replacement and repair of building elements when necessary in order to maintain a building in tenable condition. This looks like a standard form contract. Pardon me? This is a standard form contract, I take it? I believe that's correct. That's right. The Fine Family, therefore, is required to make the repairs an issue pursuant to paragraph 7. Now, the other issue that the Fine Family has raised is with respect to whether or not there's a conflict between paragraph 6 and 7 of this lease. And clearly there is not. There is no language in paragraph 6 that requires or would limit the Fine Family's obligations with respect to the air conditioning unit. Nor is there any language in paragraph 6 that would purport to limit the application of other provisions of the lease to the air conditioning unit in this case. Then why would the Postal Service have put paragraph 6 in there, counsel? I mean, why—if paragraph 7 does everything that you're saying it does, why in the world did you all put paragraph 6 in there? Paragraph 6 is what gives the Fine Family the obligation to furnish an air conditioning system in the first place and to service it. Well, but according to you, I guess paragraph 7 would require them to service it, right? Wouldn't paragraph 7 require them to service it because they've got to maintain the lease on all furnishings and equipment in good repair and tenable condition? I believe paragraph 7 would require them to repair or replace it if it were to break down. But it's paragraph 6 that requires the addition of refrigerant, the changing of filters, the kinds of things that are necessary in order to keep it operable. So you think servicing it to keep it operable is different from repairing or replacing, and that paragraph 7 only covers repairing and replacing things? Is that what I'm understanding you to say? Well, paragraph 7 covers everything that is required in order to maintain the building in good repair and tenable condition. And wouldn't putting refrigerant and filters be required to maintain the building in good and tenable condition? I mean, I suppose that's an exercise of judgment. If one were to make a determination, let's say they were in the last year of the lease and the air conditioning unit, and in paragraph 6 the servicing requirement wasn't in paragraph 6, they might make a determination that although ordinary good care of the air conditioning system would require the addition of refrigerant, they might not do it because they could fulfill their lease terms without doing it. But 7 applies to fixtures as well. So presumably the air conditioning system is a fixture, I would think. And therefore to say, I'm unclear as to why these aren't redundant, at least with respect to the repair. There's nothing particularly wrong with redundancy as long as it doesn't suggest exclusion from one by virtue of inclusion in another. But if a fixture has to be maintained in good repair and the air conditioning system is a fixture, I would think putting Freon or whatever is used as a coolant in the air conditioning system would be necessary under 7, wouldn't it? Well, your first point I think is correct in that if there is some redundancy between paragraphs 6 and 7, that's not a problem as long as there's not an inconsistency between paragraphs 6 and 7, which there is not. Or an inference would be drawn that there is exclusion from one by virtue of inclusion in another. But in any event, go ahead. But in any event, both furnishing, servicing, and repair and replacement are all covered in some sense. Some of your academic questions, whether it's under paragraph 6 or paragraph 7, but all those activities are required under the lease. Again, as I read paragraph 7, it requires only that the building be maintained in good repair and tenable condition. So if the addition of refrigerant were not necessary in order to do that, going back to the example I was using earlier, if the Fein family could maintain the air conditioning system throughout the term of the lease in good repair and tenable condition without adding refrigerant, then paragraph 7 would allow them to do that. If it's paragraph 6, it would require them to maintain the air conditioning system to perform sort of routine maintenance on the air conditioning system. But in any event, there certainly is no reason why the Fein family could not furnish, service, and maintain the air conditioning system under this lease. If the court has no further questions, I will go the rest of my time. Thank you, Mr. Chandler. Mr. Fein, you have about four minutes remaining. If you'll allow me, please. As I read this whole issue, what the government is urging you to do is to go back to December of 1967 and rewrite that contract. And it's not the court's function to rewrite the contract to say you have to replace. And that word, they are urging you to put the word replace into that contract. And I suggest that no court should rewrite any contract between the parties. It would have made it absolutely crystal clear if they had done that, but they didn't do it. And that's why we're here. Thank you for your attention to this matter. As an aside, does your family pay you for your services? I don't think I am getting paid for this. Well, demand a little extra dessert tonight. Well, I'll have to pass on. I had a meal here with my daughter and son-in-law who live up here, so I'll have to pass that along to them. Thank you, Mr. Fein.